1 | E. MARTIN ESTRADA
United States Attorney
2 | MACK E. JENKINS
Assistant United States Attorney
3 | Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
4 | Assistant United States Attorney
Deputy Chief, Major Frauds Section
5 | ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
6 | Corporate & Securities Fraud Strikeforce
       1100 United States Courthouse
7 |    312 North Spring Street
       Los Angeles, California 90012
8 |    Telephone: (213) 894-6527/1786
       Facsimile: (213) 894-6269
9 |    E-mail:   scott.paetty/ali.moghaddas@usdoj.gov

10 | Attorneys for Plaintiff
UNITED STATES OF AMERICA

11 |

12 |                  UNITED STATES DISTRICT COURT

13 |             FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 | UNITED STATES OF AMERICA,          No. CR 23-00024-JLS-1
                                            23-00047-JLS-2
           Plaintiff,

15 |                                   PLEA AGREEMENT FOR DEFENDANT
                 v.                    CHRISTOPHER KAZUO KAMON

16 | CHRISTOPHER KAZUO KAMON,

17 |             Defendant.

18 |

19 |       1.   This constitutes the plea agreement between Christopher

20 | Kazuo Kamon ("defendant") and the United States Attorney's Office for

21 | the Central District of California ("the USAO") in the above-

22 | captioned cases.  This agreement is limited to the USAO and cannot

23 | bind any other federal, state, local, or foreign prosecuting,

24 | enforcement, administrative, or regulatory authorities.

25 |                        DEFENDANT'S OBLIGATIONS

26 |       2.   Defendant agrees to:

27 |            a.   At the earliest opportunity requested by the USAO and

28 | provided by the Court, appear and plead guilty to count two of the

                                         Read and Agreed to  _Ch_

indictment in <u>United States v. Kamon</u>, CR No. 23-47-JLS, which charges
defendant with wire fraud in violation of 18 U.S.C. § 1343.

b.   Give up the right to indictment by a grand jury and,
at the earliest opportunity requested by the USAO and provided by the
Court, appear and plead guilty to the one count information in <u>United
States v. Kamon</u>, CR No. 23-24-JLS, which charges defendant with wire
fraud in violation of 18 U.S.C. § 1343.

c.   Not contest facts agreed to in this agreement.

d.   Abide by all agreements regarding sentencing contained
in this agreement.

e.   Appear for all court appearances, surrender as ordered
for service of sentence, obey all conditions of any bond, and obey
any other ongoing court order in this matter.

f.   Not commit any crime; however, offenses that would be
excluded for sentencing purposes under United States Sentencing
Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
within the scope of this agreement.

g.   Be truthful at all times with the United States
Probation and Pretrial Services Office and the Court.

h.   Pay the applicable special assessments at or before
the time of sentencing unless defendant has demonstrated a lack of
ability to pay such assessments.

i.   Defendant agrees that any and all criminal debt
ordered by the Court will be due in full and immediately.   The
government is not precluded from pursuing, in excess of any payment
schedule set by the Court, any and all available remedies by which to

2

Read and Agreed to

satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

　　　j.　Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.　Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

　　　k.　Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

　　　l.　Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

　　　m.　To the entry as part of defendant's guilty plea of a personal money judgment of forfeiture against defendant in the amount of $3,100,000.00 which sum defendant admits was derived from proceeds traceable to the violations described in the factual basis of the plea agreement.　Defendant understands that the money judgment of forfeiture is part of defendant's sentence and is separate from any *OK* fines or restitution that may be imposed by the Court. *Provided, however that any money collected by BANKRUPTCY TRUSTEE in case # 23-AP-1044 will be credited to the judgment of forfeiture.*

　　　n.　With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

Read and Agreed to *OK*

notice of the forfeiture in the charging instrument, announcements of
the forfeiture sentencing, and incorporation of the forfeiture in the
judgment; (2) all constitutional and statutory challenges to the
forfeiture (including by direct appeal, habeas corpus or any other
means); and (3) all constitutional, legal and equitable defenses to
the money judgment of forfeiture in any proceeding on any grounds
including, without limitation, that the money judgment of forfeiture
constitutes an excessive fine or punishment.  Defendant acknowledges
that entry of the money judgment of forfeiture is part of the
sentence that may be imposed in this case and waives any failure by
the Court to advise defendant of this, pursuant to Federal Rule of
Criminal Procedure 11(b)(1)(J), at the time the Court accepts
defendant's guilty plea.

THE USAO'S OBLIGATIONS

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained
in this agreement.

c.   At the time of sentencing, move to dismiss the
remaining counts of the indictment in 23-47-JLS as against defendant.
Defendant agrees, however, that at the time of sentencing the Court
may consider any dismissed charges in determining the applicable
Sentencing Guidelines range, the propriety and extent of any
departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant
demonstrates an acceptance of responsibility for the offenses up to
and including the time of sentencing, recommend a two-level reduction

4

Read and Agreed to

1  in the applicable Sentencing Guidelines offense level, pursuant to

2  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

3  additional one-level reduction if available under that section.

4          e.    At the time of sentencing, recommend that the court

5  select the low end of the applicable guideline range.

6                          NATURE OF THE OFFENSES

7          4.    Defendant understands that for defendant to be guilty of

8  the crime charged in count two of the indictment in 23-47-JLS and in

9  the single-count information in 23-24-JLS, that is, wire fraud, in

10  violation of Title 18, United States Code, Section 1343, the

11  following must be true:  1) defendant knowingly participated in a

12  scheme or plan to defraud, or a scheme or plan for obtaining money or

13  property by means of false or fraudulent pretenses, representations,

14  promises, or omitted facts.  Deceitful statements or half-truths may

15  constitute false or fraudulent representations; (2) the statements

16  made or facts omitted as part of the scheme were material, that is,

17  they had a natural tendency to influence, or were capable of

18  influencing, a person to part with money or property; (3) defendant

19  acted with the intent to defraud, that is, the intent to deceive and

20  cheat; and (4) defendant used, or caused to be used, an interstate

21  wire communication to carry out or attempt to carry out an essential

22  part of the scheme.

23                          PENALTIES AND RESTITUTION

24          5.    Defendant understands that the statutory maximum sentence

25  that the Court can impose for each violation of Title 18, United

26  States Code, Section 1343, is: 20 years' imprisonment; a three-year

27  period of supervised release; a fine of $250,000 or twice the gross

28

5

Read and Agreed to

1  gain or gross loss resulting from the offense, whichever is greatest;

2  and a mandatory special assessment of $100.

3       6.    Defendant understands, therefore, that the total maximum

4  sentence for all offenses to which defendant is pleading guilty is:

5  40 years' imprisonment; a three-year period of supervised release; a

6  fine of $500,000 or twice the gross gain or gross loss resulting from

7  the offenses, whichever is greatest; and a mandatory special

8  assessment of $200.

9       7.    Defendant understands that defendant will be required to

10  pay full restitution to the victim(s) of the offenses to which

11  defendant is pleading guilty.  Defendant agrees that, in return for

12  the USAO's compliance with its obligations under this agreement, the

13  Court may order restitution to persons other than the victim(s) of

14  the offenses to which defendant is pleading guilty and in amounts

15  greater than those alleged in the counts to which defendant is

16  pleading guilty.  In particular, defendant agrees that the Court may

17  order restitution to any victim of any of the following for any

18  losses suffered by that victim as a result: (a) any relevant conduct,

19  as defined in U.S.S.G. § 1B1.3, in connection with the offenses to

20  which defendant is pleading guilty; and (b) any counts dismissed

21  pursuant to this agreement as well as all relevant conduct, as

22  defined in U.S.S.G. § 1B1.3, in connection with those counts.

23       8.    Defendant understands that supervised release is a period

24  of time following imprisonment during which defendant will be subject

25  to various restrictions and requirements.  Defendant understands that

26  if defendant violates one or more of the conditions of any supervised

27  release imposed, defendant may be returned to prison for all or part

28

6

Read and Agreed to *ML*

*(handwritten marginal note, rotated along left edge):* 7A. The Parties of/of that any funds collected by Bankruptcy Trustee in Case # 25/AP/0480 will be credited to restitution amount.

of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

10.    Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and

Read and Agreed to _____

immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

## FACTUAL BASIS

11. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided in Exhibit A attached hereto and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

12. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

Read and Agreed to _CH_

appropriate up to the maximum set by statute for the crimes of
conviction.

13.   Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

Base Offense Level:            7   U.S.S.G. §§ 2B1.1(a)(1)

Specific Offense
Characteristics:

Loss                          16-20   U.S.S.G. § 2B1.1(b)(1)(I)-(K)

Defendant agrees that the loss is at least $7,500,000 and
reserves the right to argue that the loss amount is not higher $9.5
million.   The USAO contends that the loss amount is higher and
reserves the right to argue that it is over $9,500,000 but agrees
that it is less than $25,000,000 and that an adjustment of plus 20
for loss applies under U.S.S.G. § 2B1.1(b)(1)(K).

Defendant and the USAO reserve the right to argue that
additional specific offense characteristics, adjustments, and
departures under the Sentencing Guidelines are appropriate.
Defendant understands that there is no agreement as to defendant's
criminal history or criminal history category.

14.   Defendant and the USAO reserve the right to argue for a
sentence outside the sentencing range established by the Sentencing
Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
(a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant
gives up the following rights:

    a.   The right to persist in a plea of not guilty.

    b.   The right to a speedy and public trial by jury.

Read and Agreed to

c.    The right to be represented by counsel – and if necessary have the Court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

16.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that

10

Read and Agreed to

the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17.   Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 36 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines,

Read and Agreed to *CA*

sentencing statutes, or statutes of conviction. Defendant understands
that this waiver includes, but is not limited to, arguments that the
statutes to which defendant is pleading guilty are unconstitutional,
and any and all claims that the statement of facts provided herein is
insufficient to support defendant's pleas of guilty.

19.   The USAO agrees that, provided all portions of the sentence
are at or below the statutory maximum specified above, the USAO gives
up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20.   Defendant agrees that if, after entering guilty pleas
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty pleas on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then the USAO will be relieved of all of its obligations
under this agreement; and (b) should the USAO choose to pursue any
charge or any civil, administrative, or regulatory action that was
either dismissed or not filed as a result of this agreement, then
(i) any applicable statute of limitations will be tolled between the
date of defendant's signing of this agreement and the filing
commencing any such action; and (ii) defendant waives and gives up
all defenses based on the statute of limitations, any claim of pre-
indictment delay, or any speedy trial claim with respect to any such
action, except to the extent that such defenses existed as of the
date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

21.   Defendant agrees that if any count of conviction is
vacated, reversed, or set aside, the USAO may: (a) ask the Court to

12

Read and Agreed to

resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## EFFECTIVE DATE OF AGREEMENT

22. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

23. Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a. If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas; and

13

Read and Agreed to

    b.    The USAO will be relieved of all its obligations under this agreement.

24.    Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

    a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
## OFFICE NOT PARTIES

25.    Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.    Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the

14

Read and Agreed to _CM_

Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 13 are
consistent with the facts of this case. While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

27. Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty pleas, and defendant will remain bound to
fulfill all defendant's obligations under this agreement. Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be within
the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

28. Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the USAO
and defendant or defendant's attorney, and that no additional
promise, understanding, or agreement may be entered into unless in a
writing signed by all parties or on the record in court.

Read and Agreed to

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

29.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____                         10/8/24
SCOTT PAETTY                                              _____
ALI MOGHADDAS                                             Date
Assistant United States Attorneys

_____                         10/8/24
CHRISTOPHER KAZUO KAMON                                   _____
Defendant                                                Date

_____                         10.8.2024
MICHAEL V. SEVERO                                        _____
Attorney for Defendant CHRISTOPHER                       Date
KAZUO KAMON


<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences

16

Read and Agreed to

1  of entering into this agreement.  No promises, inducements, or

2  representations of any kind have been made to me other than those

3  contained in this agreement.  No one has threatened or forced me in

4  any way to enter into this agreement.  I am satisfied with the

5  representation of my attorney in this matter, and I am pleading

6  guilty because I am guilty of the charges and wish to take advantage

7  of the promises set forth in this agreement, and not for any other

8  reason.

9

10  _____          _____ 10/8/24 _____
    CHRISTOPHER KAZUO KAMON                    Date

11  Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Read and Agreed to

1

## CERTIFICATION OF DEFENDANT'S ATTORNEY

2      I am CHRISTOPHER KAZUO KAMON's attorney.  I have carefully and

3   thoroughly discussed every part of this agreement with my client.

4   Further, I have fully advised my client of his rights, of possible

5   pretrial motions that might be filed, of possible defenses that might

6   be asserted either prior to or at trial, of the sentencing factors

7   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8   provisions, and of the consequences of entering into this agreement.

9   To my knowledge: no promises, inducements, or representations of any

10   kind have been made to my client other than those contained in this

11   agreement; no one has threatened or forced my client in any way to

12   enter into this agreement; my client's decision to enter into this

13   agreement is an informed and voluntary one; and the factual basis set

14   forth in this agreement is sufficient to support my client's entry of

15   guilty pleas pursuant to this agreement.

16

17   _____          10.8.2024
   MICHAEL V. SEVERO                       _____
   Attorney for Defendant CHRISTOPHER      Date
18   KAZUO KAMON

19

20

21

22

23

24

25

26

27

28

Read and Agreed to ___

**EXHIBIT A**

**STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT**

From in or about 2004 until in or about December 2020, defendant Kamon was head of the accounting department at the law firm Girardi Keese.  Girardi Keese was a law firm that was located in Los Angeles, California, and was owned and managed by Thomas Vincent Girardi, who is also a co-defendant in 23-47-JLS.  Girardi Keese primarily represented plaintiffs in personal injury cases.  From his position as head of accounting at Girardi Keese, defendant Kamon worked closely with co-defendant Girardi and other senior lawyers at Girardi Keese, supervised its accounting department, and was in charge of facilitating the firm's payment of expenses.  As head of accounting at Girardi Keese, defendant Kamon had a duty to keep accurate books and records of the firm, including the accounting of monies held in its attorney-client trust accounts.

Defendant Kamon had access to, knowledge of the balances, and, at defendant Girardi's direction oversaw various Girardi Keese attorney-client trust accounts, also called an "Interest on Lawyer's Trust Account" or "IOLTA" accounts, at defendant Girardi's direction, including an account at Torrey Pines Bank, bearing an account number ending in 5859 (the "Torrey Pines IOLTA Account"), and an account at Nano Banc, bearing an account number ending in 0567 (the "Nano Banc IOLTA Account").  An IOLTA account is a special kind of trust account.  Any interest earned on funds kept in an IOLTA should not be kept by the law firm but should instead be sent to the California State Bar.  An IOLTA account is intended as a short-term place wherein settlement money would be deposited and funds promptly would be sent to the respective clients.  Typically, defendant Girardi

Read and Agreed to

1  determined and directed which clients would be paid, how much they
2  would be paid, when they would be paid and signed all outgoing checks
3  to clients.

4      Defendant Kamon ~~also~~ had signatory authority on additional bank
5  accounts maintained by Girardi Keese, including two operating
6  accounts, a Torrey Pines Bank account ending in 9821 ("Account 9821")
7  and a Nano Banc account ending in 0096 ("Account 0096").  Defendant
8  Kamon used Account 9821 and Account 0096 to pay Girardi Keese's
9  operating expenses, such as payroll, rent, and other day-to-day
10  costs.  Generally, defendant Girardi called defendant Kamon each
11  morning and asked for the balances of the Girardi Keese bank
12  accounts, including the IOLTA accounts.  Defendant Kamon knew that
13  the trust account should be used to pay clients and draw GK's fees
14  and costs when appropriate.  When the Girardi Keese operating
15  accounts were low, defendant Kamon would relay this information to
16  defendant Girardi.  Defendant Girardi would then instruct defendant
17  Kamon to transfer money from the Girardi Keese IOLTA accounts to the
18  operating accounts.  Defendant Girardi would identify cases to debit
19  the money from and instruct defendant Kamon to identify the
20  withdrawal as "attorney fees" from the cases.  If defendant Girardi
21  instructed defendant Kamon to transfer attorney fees from a case in
22  which fees had already been taken, defendant Kamon would so inform
23  defendant Girardi. Defendant Girardi would instruct defendant Kamon
24  to "do it anyways".  This was a common practice at Girardi Keese of
25  which other senior lawyers in the firm were aware.

26      Beginning at least as early as in or around 2010 and continuing
27  through at least in or around December 2020, in Los Angeles County,

28

2

Read and Agreed to _CK_

within the Central District of California, and elsewhere, defendants
Girardi and Kamon together with others, knowingly and with intent to
defraud, devised, participated in, and executed a scheme to defraud
victim clients to whom defendant Girardi and Girardi Keese had agreed
to provide legal services as to material matters, and to obtain money
and property from such victim clients by means of material false and
fraudulent pretenses, representations, and promises, and the
concealment of material facts.

In furtherance of the scheme, attorneys at Girardi Keese,
including defendant Girardi, would negotiate a settlement on behalf
of a client that would require the payment of funds to the client.
Defendants Girardi and, at times, others with knowledge would cause
the settlement proceeds to be deposited in or transferred to attorney
trust accounts, including the Torrey Pines IOLTA Account and the Nano
Banc IOLTA Account.  Defendant Girardi would thereafter embezzle and
misappropriate settlement funds from the Torrey Pines IOLTA Account
and the Nano Banc IOLTA Account belonging to Girardi Keese clients
for improper purposes.  The improper purposes included, among other
things, paying other Girardi Keese clients whose own settlement funds
had previously been misappropriated, paying Girardi Keese's payroll,
and paying other Girardi Keese's expenses, including its American
Express Card bills encompassing charges for defendants Girardi and
Kamon's personal expenses.

Embezzlement of Client 1's Funds

"Client 1" was an individual who resided in San Bruno,
California.  Beginning on or about October 1, 2010, defendant Girardi
and Girardi Keese had a formal attorney-client relationship with

3

Read and Agreed to _CM_

1  Client 1.  Specifically, defendant Girardi and Girardi Keese agreed

2  to represent Client 1 in connection with a lawsuit against a public

3  utility related to significant injuries Client 1 sustained as a

4  result of an explosion that caused severe burns all over his body.

5  In or about January 2013, defendant Girardi negotiated a settlement

6  of the lawsuit related to Client 1's injuries without obtaining prior

7  approval of the settlement terms from Client 1.  The terms of the

8  settlement provided that Client 1 would be paid $53,000,000 to

9  release all of Client 1's claims.  Pursuant to Client 1's retainer

10 agreement with Girardi Keese, Girardi Keese's attorneys' fees, in the

11 amount of 25% of the settlement amount, costs, and expenses were to

12 be deducted from the settlement proceeds and paid to Girardi Keese.

13     As part of the settlement agreement, $25,000,000 were invested

14 in an annuity for the benefit of Client 1.

15     On or about January 24, 2013, the remaining amount of the

16 settlement, namely, $28,000,000, was wire transferred to the Torrey

17 Pines IOLTA Account.  Defendants Girardi and Kamon were provided

18 notice of the incoming wire that same day.  Defendant Girardi then

19 misappropriated and embezzled a portion of Client 1's settlement

20 funds and caused those funds to be used to pay other expenses and

21 liabilities of Girardi Keese unrelated to Client 1, including

22 payments to other Girardi Keese clients whose own settlement funds

23 had previously been misappropriated by defendant Girardi and others.

24     In order to lull Client 1 and prevent Client 1 from discovering

25 that defendant Girardi had embezzled Client 1's settlement funds,

26 defendant Girardi falsely informed Client 1 that Client 1's

27 settlement funds had been transferred into a separate interest-

28

4

Read and Agreed to _CM_

bearing account when, in fact, no such transfers had been made and no such separate interest-bearing account containing Client 1's settlement funds existed.

Thereafter defendants Girardi and Kamon, aiding and abetting each other, caused to be committed the following acts:

- Sending and causing to be sent lulling payments to Client 1 as purported "interest payments" deriving from the supposed separate interest-bearing account; and

- Sending and causing to be sent, on July 1, 2019, a check for $2,500,000 to Client 1 purportedly as a disbursement of Client 1's settlement funds, which funds were, as defendants Girardi and Kamon then knew, settlement proceeds belonging to other Girardi Keese clients, and not Client 1's settlement proceeds, which defendant Girardi had already spent and caused to be spent through disbursements unrelated to Client 1.

For the purpose of executing the above-described scheme to defraud, defendants Girardi and Kamon, aiding and abetting each other, transmitted and caused to be transmitted a wire clearing the above referenced $2,500,000 check drawn on the Nano Banc IOLTA Account and deposited into First Century Bank, in Los Angeles, California, which wire traveled via a server located in Oklahoma City, Oklahoma, for the benefit of Client 1, the source of which funds was, in part, the settlement proceeds belonging to other clients of Girardi Keese.

Read and Agreed to *CK*

### Defendant Kamon's Embezzlement of Girardi Keese Funds

In addition to the above scheme to defraud Girardi Keese
clients, beginning at least as early as 2013 and continuing through
at least in or about December 2020, defendant Kamon together with
others, knowingly and with the intent to defraud, devised,
participated in, and executed a scheme to defraud Girardi Keese as to
material matters, and to obtain money and property from Girardi Keese
by means of material false and fraudulent pretenses, representations,
and promises, and the concealment of material facts.  Defendant Kamon
used his position as head of accounting at Girardi Keese to knowingly
and intentionally embezzle funds in the custody and control of
Girardi Keese and divert those misappropriated funds for his own
personal enrichment and the enrichment of others.

In furtherance of the scheme, defendant utilized co-schemers,
including I.B., to pose as "vendors" who were providing goods and
services to Girardi Keese.  Defendant Kamon caused the supposed
vendors to issue fraudulent invoices to Girardi Keese for goods and
services that the vendors purportedly provided to Girardi Keese.
Defendant Kamon caused Girardi Keese to pay the amounts due on the
fraudulent invoices to the vendors.  Defendant Kamon maintained the
pretense and represented to Girardi Keese that the payments were owed
to the vendors by Girardi Keese because they were payments for work
purportedly performed for the benefit of Girardi Keese.  In fact, as
defendant Kamon then knew, the payments he was causing Girardi Keese
to make to these supposed vendors were not for goods or services
provided to Girardi Keese, but instead were for goods and services
for the personal benefit of defendant Kamon, including for

6

Read and Agreed to *CA*

1  construction projects at defendant Kamon's personal residences in

2  Palos Verdes and Encino, California.  On or about September 20, 2020,

3  in Los Angeles County, within the Central District of California,

4  defendant Kamon, for the purpose of executing the above-described

5  scheme to defraud, transmitted and caused the transmission of an item

6  by means of wire communication in interstate commerce, namely, check

7  #11625 in the amount of approximately $4,885.67 from Account 0096 to

8  a bank account owned and controlled by co-schemer I.B.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

Read and Agreed to  *ouu*